# IN THE SUPREME COURT OF TEXAS

━━━━━━━━

No. 07-0945

━━━━━━━━

TEXAS PARKS AND WILDLIFE DEPARTMENT, PETITIONER,

v.

THE SAWYER TRUST, RESPONDENT

━━━━━━━━━━━━━━━━━━━━

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SEVENTH DISTRICT OF TEXAS

━━━━━━━━━━━━━━━━━━━━

CHIEF JUSTICE JEFFERSON, joined by JUSTICE MEDINA, JUSTICE WILLETT, and JUSTICE GUZMAN, concurring.

I join the Court's opinion but offer a few additional observations about the dissent. According to the dissent, our decision today is groundbreaking because it waives immunity for trespass to try title suits. But at least since *State v. Lain*,[1] and probably since *State v. Bradford*,[2] that has been the law in Texas. *See, e.g.*, *Coastal Indus. Water Auth. v. York*, 532 S.W.2d 949, 954 (Tex. 1976) (holding, in declaratory judgment action brought by private party, that title remained with that party and not with the water authority); *Lain*, 349 S.W.2d at 586 (affirming judgment that private parties had title and possession as against state officials who claimed title on behalf of the state); *Manry v. Robison*, 56 S.W.2d 438, 448–49 (Tex. 1932) (determining that State did not own riverbed

---

[1] 349 S.W.2d 579, 582 (Tex. 1961).

[2] 50 S.W.2d 1065, 1069 (Tex. 1932).

and that private parties had title thereto); *Tex. River Barges v. City of San Antonio*, 21 S.W.3d 347, 351–52 (Tex. App.—San Antonio 2000, pet. denied) (holding that trial court correctly concluded that river was navigable).[3]

The dissent accurately notes that *Heinrich*'s ultra vires rule does not apply if the government official's acts were discretionary. The dissent then laments that allowing an ultra vires claim to determine navigability goes beyond *Heinrich* and "abolish[es] immunity altogether." ___ S.W.3d at ___. This incorrectly presumes, however, that a state official's assertion of title is a discretionary act. But navigability (which, here, determines title) "is not a question left to the discretion and judgment of ministerial officers." *Bradford*, 50 S.W.2d at 1070. Rather, "[u]nder the law, *those officers were and are not clothed with the power to settle questions of navigability of streams, but in view of the very nature and importance of the matter, for obvious reasons, it is a question for judicial determination.*" *Id.* (emphasis added).[4] Government officials cannot choose which properties the State owns; our constitution and statutes set those parameters, and our courts decide whether they have been satisfied. *See Lorino v. Crawford Packing Co.*, 175 S.W.2d 410, 413 (Tex. 1943) (observing that lands covered by navigable waters could not be sold by the land commissioner or other ministerial officer; such sale or grant may only be authorized by the Legislature); *see also*

---

[3] *See also, e.g.*, 17 WILLIAM V. DORSANEO, III, ET AL., TEXAS LITIGATION GUIDE § 251.04[4][b] (2011) ("A plaintiff . . . may effectively evade sovereign immunity concerns by bringing a trespass to try title action against an appropriate government officer in an official capacity, because legislative consent to suit against an officer is not required in the specific context of a trespass to try title action.") (citing *Lain*, 349 S.W.2d at 581).

[4] *Cf. Oklahoma v. Texas*, 258 U.S. 574, 585 (1922) (noting that government surveyors' determination created a "legal inference of navigability" that had little significance because "those officers were not clothed with power to settle questions of navigability"); *Barden v. N. Pac. R.R. Co.*, 154 U.S. 288, 320–21 (1894) (observing that government surveyor's determination was entitled to "[s]ome weight" but was not conclusive because he was not "authorized to determine finally the character of any lands granted or make any binding report thereon").

*Manry*, 56 S.W.2d at 449 (denying mandamus relief to party seeking mineral permit from the State, because evidence showed that State did not own riverbed).

In *Lain*, we made clear that a government actor is not immune from a trespass-to-try-title suit, and we described how to bring such a claim. *State v. Lain*, 349 S.W.2d 579, 581–82 (Tex. 1961) ("One who takes possession of another's land without legal right is no less a trespasser because he is a state official or employee, and the owner should not be required to obtain legislative consent to institute a suit to oust him simply because he asserts a good faith but overzealous claim that title or right of possession is in the state and that he is acting for an on behalf of the state."). We had earlier held that ultra vires actions remained viable, expressly rejecting the federal courts' approach (which so restricted officer suits and expanded immunity that Congress eventually passed the Quiet Title Act of 1972). *See W. D. Haden Co. v. Dodgen*, 308 S.W.2d 838, 843 (Tex. 1958)[5]; *see also* 28 U.S.C.§§ 2409a, 1346(f), 1402(d).

The dissent has conjured an unorthodox takings claim based on the civil and criminal penalties associated with appropriating the State's sand and gravel. There are several problems with

---

[5] We stated:

> Our quotation of portions of the opinion in [*Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949)] dealing with the contract phase of the case is not to be considered as an approval of the limitation imposed on the rule of *United States v. Lee* as that rule has been adopted and applied by the courts of this state in *Imperial Sugar Co. v. Cabell* and *State v. Epperson*, a limitation vigorously questioned in the dissenting opinion of Mr. Justice Frankfurter. *We have no disposition to extend or broaden the rule of immunity in this state.*

*W. D. Haden Co. v. Dodgen*, 308 S.W.2d 838, 843 (Tex. 1958) (emphasis added) (citations omitted).

3

this approach.  First, if all the government has done is claim title,[6] a takings claim is premature.  *Cf.*

*Hous. N. Shore Ry. Co. v. Tyrrell*, 98 S.W.2d 786, 793 (Tex. 1936) (noting that "[i]f the petitioner

in condemnation claims the fee title to the property, his petition should be dismissed" because

"[u]nless title in the condemnee is admitted the county court is without jurisdiction" (quoting

*McInnis v. Brown Cnty. Water Improvement Dist. No. 1*, 41 S.W.2d 741, 744 (Tex. Civ.

App.—Austin 1931, writ ref'd))); *see also Wisc. Valley Improvement Co. v. FERC*, 236 F.3d 738,

743–44 (D.C. Cir. 2001) (observing that plaintiff could try its title claims in either state court or a

federal district court and, if successful, could then pursue a takings claim in the Court of Federal

Claims); 2 NICHOLS ON EMINENT DOMAIN § 5.02 [2][b] (3d ed. 2010) ("If petitioners claim title to

the land they wish to occupy, a petition for condemnation is not the proper proceeding to institute

for the purpose of trying the question.").  We have long recognized that "there is irreconcilable

inconsistency between an allegation by the condemnor of the entire title, or a paramount title, in

himself, and the taking of the property of another by the proceeding; that condemnation rests upon

necessity, and there can be no necessity to acquire what one already owns." *Tyrrell*, 98 S.W.2d at

794.

Second, authorizing a takings claim to determine title, when the Department has merely

asserted ownership, evades statutory trespass-to-try-title requirements.  A trespass-to-try-title suit

is generally the only way to resolve contested title claims, even when its requirements have

sometimes produced harsh results.  TEX. PROP. CODE § 22.001(a); *Martin v. Amerman*, 133 S.W.3d

---

[6] *See* ___ S.W.3d at ___ (noting that the Department "has not done anything that would require it to compensate the Trust if the streambed is not navigable").

4

262, 265 (Tex. 2004). Whether such strictures are good policy[7] is a question for the Legislature, not the courts. Allowing a party to litigate title through a takings claim will essentially override these statutory requirements.

Third, the dissent would hold that a takings claim is viable when the government imposes severe penalties for an individual's legitimate assertion of title. At what point are penalties so severe that a takings action is authorized? A proliferation of lawsuits on "severity" is the predictable consequence of the dissent's approach. Even if the severity of a financial penalty could be defined, rarely will a case arise in which a criminal sanction does not accompany the theft of state property. And even if there were such a case, a landowner would be forced to sell natural resources at its peril, subject to a conversion claim the State *might* bring. How can a party manage its property without knowing whether it will be subject to liability for doing so?

The issue here is not whether the Department has taken Trust property but who owns the property in the first place. Answering that question will resolve this case, and under longstanding precedent, an ultra vires action—not a takings claim—is the appropriate vehicle for doing so.

 

 

 

                                            _____

                                            Wallace B. Jefferson
                                            Chief Justice

OPINION DELIVERED: August 26, 2011

---

[7] *See, e.g.*, William V. Dorsaneo, III, *Dorsaneo on Trespass to Try Title Actions,* Martin v. Amerman*, and H.B. 1787*, 2008 EMERGING ISSUES 759, at *1 (Oct. 17, 2007) (asserting that "it is past time for the abolition of trespass to try title actions as the exclusive method of determining land title disputes generally").

5